ALBERT PALMER,

          Plaintiff,

v.                                        Civil Action No. 1:06cv35
                                        (Judge Keeley)

AL HAYNES, V. PURI, CHRIS PULICE
AND PATRICIA MALDONADO,

          Defendants.

## REPORT AND RECOMMENDATION

On June 1, 2006, the *pro se* plaintiff initiated this case by filing a civil rights complaint in the United States District Court for the Southern District of West Virginia.  Because the complaint challenges the conditions of Plaintiff's confinement at the Hazelton Penitentiary in Bruceton Mills, West Virginia, the case was transferred to this Court.  Upon receipt by this Court, the complaint was construed as a civil rights action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (authorizing civil suits against federal employees in their individual capacities) and docketed accordingly.  On April 28, 2006, Plaintiff was granted permission to proceed as a pauper.  This case is before the undersigned for a preliminary review and report and recommendation pursuant LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915A.

## I.  The Complaint

As to Warden Haynes, Plaintiff merely asserts that the Warden "failed to recognize and produce the results that would have granted me temporary medical relief of my chronic case concerns.  He appeared to have been willfully blind and deliberately indifferent according to his

investigative response." Complaint at 4.

As to V. Puri, Plaintiff asserts that Defendant Puri "was fully aware of all things encompassed in my claim. And yet, she chose to be willfully blind, deliberately indifferent, deceptive regarding the medical facts that has turned out to be of great detriment to my health condition." Id.

As to Chris Pulice, Plaintiff asserts that Defendant Pulice is his unit manager. Id. at 5. When Plaintiff was in the process of "diligently seeking chronic care service, and filing the administrative process[,] he [Pulice] willfully engaged in delaying or impeding the process by being deliberately indifferent, intentionally deceitful and discard the initial round of informal resolution forms which had to be resubmitted to get any consideration." Id.

As to Patricia Maldonado, Plaintiff asserts that Defendant Maldonado is his case manager. Id. Plaintiff asserts that Defendant Maldonado "decided to concur and assisted with concealing the facts of my above claims regarding Unit Mgr. Chris Pulice." Id.

These four paragraphs make up Plaintiff's entire complaint. Plaintiff never states what his claim is or what facts give rise to his claim. However, on what is labeled a continuation page, Plaintiff states that after conferring with Susan Folk, the Consolidated Services Manager, he was scheduled for an appointment for a physical and to review his medical jacket with Dr. J. Vasquez, an infectious disease specialist. Plaintiff further asserts that "it was at that time" that all of his medical horrors were unsealed as to his chronic care concerns. Plaintiff then states that to properly treat his HIV-AIDS, there has to be lab work conducted to ascertain his precise health status. Plaintiff asserts, without explaining, that his CD4-CD8 and viral load lab work are vitally important, but that since his arrival on April 28, 2005, none of those labs have been ordered. However, Plaintiff then goes on to state that at his appointment with Dr. Vasquez on

2

February 9, 2005, he received the results of lab tests done on June 15, 2005 and November 30, 2005.

Also at the February 9th appointment, Plaintiff asserts that Dr. Vasquez informed him that his glucose levels were high, his blood pressure was high, and that he had high cholesterol. Plaintiff asserts that these conditions are all new and resulted from the "neglect and deliberate indifference." In addition to his new medical conditions, Plaintiff asserts that he suffers from night sweats, weight loss, skin deterioration on his hands and feet, a loss of vision, and diarrhea, none of which have allegedly ever been treated. Plaintiff also asserts that he has not been provided a dental check-up, that he has not been scheduled to see a cardiologist or to have an EKG for his heart condition, and that although he has had prior exposure to TB, he has not been given a chest x-ray to determine his status.

Additionally, Plaintiff states that at the time he arrived at Hazelton, the "administration" was well aware that the medical department was inadequate to service his chronic care needs. Plaintiff asserts, without explaining, that he is a level three chronic care patient. Moreover, Plaintiff asserts that at the time of his arrival at the Hazelton facility, the medical department had only a nurse practioner available. Plaintiff asserts that nurse practitioners are only qualified to treat up to and including level two chronic care patients. Thus, Plaintiff asserts that his life was put in danger immediately upon his arrival.

Finally, Plaintiff asserts that as a level three chronic care patient, he is supposed to receive a physical every thirty days by a medical doctor. However, this was not done. In fact, Plaintiff asserts that prior to seeing Dr. Vasquez on February 9th, he had only been seen two other times in the preceding ten months.

Also in the complaint, Plaintiff asserts that he filed administrative grievances with the

Warden and was told that his claim has no merit.

## II.  Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  Complaints which are frivolous or malicious, must be dismissed.  28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  However, the Court must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).   A complaint filed *in forma pauperis* which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous.  See Neitzke at 328.  Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," or when the claims rely on factual allegations which are  "clearly baseless."  Id. at 327; Denton v. Hernandez, 504 U.S. 25, 32 (1992).

## III.  Failure to State a Claim

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (emphasis added).   "And, although the pleading requirements of Rule 8(a) are very liberal, more detail

4

often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted). This is particularly true in a Bivens action where "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

In the instant case, Plaintiff makes no specific allegations against any of the named defendants. Additionally, Plaintiff provides practically no factual support for his claim. At best, the Court can merely guess from Plaintiff's continuation page that he is alleging a deliberate indifference claim against the defendants for the lack of medical treatment. However, Plaintiff fails to assert how each defendant was involved in the alleged lack of treatment. Thus, the plaintiff fails to state a claim for which relief can be granted and the complaint should be dismissed. See Weller v. Dept. of Social Servs., 901 F.2d 387 (4th Cir. 1990) (dismissal proper where there were no allegations against defendants).

However, even if the complaint does state facts sufficient to state a claim of deliberate indifference against the defendants, Plaintiff's claims are still due to be dismissed for the admitted failure to exhaust administrative remedies.

### IV. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. Id. at 524; Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements." See Booth, 532 U.S. at 741 n. 6.

The Bureau of Prisons ["BOP"] makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

Because it appeared from the complaint that Plaintiff had failed to exhaust his administrative remedies, on July 3, 2006, Plaintiff was directed to file proof of exhaustion. On July 14, 2006, the undersigned received a letter from the Plaintiff regarding his administrative remedies. In the letter, Plaintiff asserts that he attempted to exhaust his administrative remedies, but was thwarted by his counselor and case manager, although Plaintiff does not assert what his efforts were or how they were thwarted. Moreover, Plaintiff admits that the highest level of the

6

process that he completed was an institutional grievance filed with the Warden. Plaintiff then asks the Court to consider these facts. Because of the substance of the letter, it was docketed as a response to the Court's Order of July 3rd.

Because it is clear that Plaintiff failed to file an appeal of his institutional remedy at either the regional or central office levels, the complaint should be dismissed without prejudice for the failure to exhaust administrative remedies. See Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

## V. Recommendation

For the foregoing reasons, the undersigned recommends that Plaintiff's complaint be **DISMISSED without prejudice** for the failure to state a claim and/or for the failure to fully exhaust administrative remedies.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, and party may file written objections with the Clerk of Court. The written objections shall identify those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff and counsel of record, as applicable.

DATED: September 27, 2006.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE